1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7   TED LOUIS BRADFORD,

8                          Plaintiff,

9        v.

10  JOSEPH SCHERSCHLIGT; and the
    CITY OF YAKIMA,

11

12                         Defendants.

NO:  13-CV-3012-TOR

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

13        BEFORE THE COURT is Defendants' Motion for Summary Judgment

14  (ECF No. 21).  This matter was heard with oral argument on June 11, 2014, in

15  Yakima, Washington.   Plaintiff was represented by Felix G. Luna and Tomas

16  Gaham.  Defendants were represented by Robert L. Christie, Jason M. Rosen and

17  Daniel P. Kenny.  The Court has reviewed the record and files herein, including

18  supplemental briefing filed after the hearing (ECF Nos. 51, 53 and 54), and is fully

19  informed.

20

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 1

BACKGROUND

Plaintiff was convicted of first-degree rape and first-degree burglary in 1996. His judgment and sentence were subsequently vacated on August 1, 2008, after DNA testing excluded him as a contributor of genetic material found on evidence recovered from the crime scene.  Notwithstanding this development, the State of Washington amended the charges and tried the case for a second time.  Plaintiff was acquitted of both amended charges on February 11, 2010.

Plaintiff filed the instant lawsuit on February 7, 2013.  His Third Amended Complaint asserts a constitutional claim under 42 U.S.C. § 1983 and pendent state claims against the detective who investigated the rape, Joseph Scherschligt, and Scherschligt's employer, the City of Yakima.  In a nutshell, Plaintiff's theory of liability is that Scherschligt deliberately charged ahead with a flawed investigation when he knew or should have known that Plaintiff was not the perpetrator of the rape.

Defendants now move for summary judgment.  Their principal argument is that Plaintiff's claims are untimely because they were not filed within three years of August 1, 2011, the date on which Plaintiff's conviction was vacated.  Plaintiff, for his part, counters that the statute of limitations did not begin to run until February 11, 2010, the date on which he was acquitted at his second trial.  Both parties urge the Court to adopt their analysis as the proper application of the rule

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 2

1    announced in *Heck v. Humphrey*—that a claim that would necessarily imply the

2    invalidity of a criminal conviction is not cognizable until the conviction has been

3    "reversed on direct appeal, expunged by executive order, declared invalid by a

4    state tribunal authorized to make such a determination, or called into question by a

5    federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486 (1994).

6        For the reasons discussed below, the Court concludes that Plaintiff's claims

7    are untimely. Plaintiff had a "complete and present cause of action" with respect

8    to his §1983 claim shortly after he was convicted in 1996. By virtue of his

9    conviction, however, the claim was *Heck*-barred until the conviction was formally

10   vacated on August 1, 2008. The fact that criminal charges remained pending until

11   Plaintiff was eventually acquitted in February 2010 is not relevant; because

12   Plaintiff faced no more than an "anticipated future conviction," *Heck* did not bar

13   him from pursuing the claim. Given that Plaintiff did not file the claim within

14   three years after August 1, 2008, the claim must be dismissed. Plaintiff's pendent

15   state claims are also untimely and must be dismissed.

16   ///

17   ///

18   ///

19   ///

20   ///

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 3

FACTS AND PROCEDURAL HISTORY

Plaintiff Ted Bradford ("Plaintiff") was convicted of first-degree rape and first-degree burglary in 1996.[1]  Plaintiff was sentenced to ten years in prison with credit for time served.  In 2002, Plaintiff requested that evidence recovered from the crime scene be submitted for DNA testing that had not been available when he was convicted.  Testing performed in 2005 excluded Plaintiff as a contributor of genetic material recovered from a mask brought to the scene by the perpetrator.

Armed with this new evidence, Plaintiff filed a personal restraint petition in the Washington Court of Appeals seeking to have his conviction set aside.  The Court of Appeals subsequently ordered a reference hearing "to resolve the factual dispute of whether DNA evidence so reduces the possibility that [Plaintiff] is the perpetrator that, when considered with the other evidence admitted at [Plaintiff's] trial, it will probably change the result of that trial."  *In re: Pers. Restraint of Bradford*, 140 Wash. App. 124, 127 (2007).  After conducting a hearing in September 2006, the Yakima County Superior Court found that the outcome of the trial likely would have been different had the new DNA evidence been available and admitted.  The Court of Appeals agreed, and granted the petition in August

---

[1] A detailed account of the facts which resulted in this conviction can be found in *State v. Bradford*, 95 Wash. App. 935 (1999).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

2007.  *Id.* at 132.  This ruling was without prejudice to the State's right to pursue a second conviction: "factual disputes regarding [Plaintiff's] confession and alibi, like the other factual disputes noted by the parties, remain open questions for a jury to resolve upon retrial and in the context of the new DNA evidence." *Id.*  The State unsuccessfully petitioned for review by the Washington Supreme Court in February 2008, and the case was remanded to the Yakima County Superior Court. That court entered an order vacating Plaintiff's judgment and sentence on August 1, 2008.  ECF No. 31-5 at Exhibit 41.

The State filed a new Information on September 30, 2008, charging Plaintiff with aggravated rape and aggravated burglary. ECF No. 31-5 at Exhibit 42. The case eventually proceeded to a second trial in February 2010.  Plaintiff was acquitted of both charges on February 11, 2010.

Plaintiff filed the instant lawsuit on February 7, 2013.  The Third Amended Complaint, which is the operative complaint for purposes of this motion, asserts three causes of action: (1) a claim under 42 U.S.C. § 1983 against the detective who investigated the rape, Defendant Joseph Scherschligt ("Scherschligt"), for "engaging in improper identification practices, using investigative techniques that were so coercive and abusive that [Scherschligt] knew or should have known would lead to a false confession, and by continuing his investigation of [Plaintiff] even though he knew or should have known that [Plaintiff] was innocent"; (2) a

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5

1    negligent training and supervision claim against Defendant City of Yakima for

2    breaching its duty to properly train and supervise Scherschligt; and (3) an outrage

3    claim against both Defendants for "pursu[ing] an innocent man through the use of

4    improper practices."[2]  ECF No. 18, ¶¶ 5.1-7.2.

5        Defendants filed the instant motion for summary judgment on April 22,

6    2014.  Defendants seek summary dismissal on the following grounds: (1) for

7    failure to file all claims within the applicable three-year statute of limitations; (2)

8    under the doctrine of collateral estoppel (issue preclusion) for claims relating to an

9    allegedly coerced confession; (3) under the public duty doctrine as to Plaintiff's

10   negligent training and supervision claim; (4) under the doctrine of qualified

11   immunity as to any claims arising under § 1983; and (5) due to the absence of a

12   genuine issue of material fact concerning Plaintiff's outrage claim.  ECF No. 21.

13

14

15

16   ---

[2] The three prior iterations of Plaintiff's complaint contain allegations that

17   Scherschligt suppressed material exculpatory evidence in violation of *Brady v.*

18   *Maryland*, 373 U.S. 83 (1963), prior to Plaintiff's first trial.  *See* ECF No. 1 at ¶¶

19   4.16-4.21, 5.1; ECF No. 2 at ¶¶ 4.16-4.21, 5.1; ECF No. 3 at ¶¶ 4.16-4.21, 5.1.

20   Plaintiff has omitted these allegations from the Third Amended Complaint.

DISCUSSION

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248.  A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.*  In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Only evidence which would be admissible at trial may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

**A. Statute of Limitations on Section 1983 Claim**

Defendants have moved for summary dismissal of Plaintiff's § 1983 claim on statute of limitations grounds. The statute of limitations on a § 1983 claim filed in Washington is three years. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002). Federal law dictates when such a claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Generally, a § 1983 claim accrues when the plaintiff knows or has reason to know of the injury that forms the basis of the claim. *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001).

1. <u>What type of claim is Plaintiff asserting under § 1983?</u>

For reasons that will be discussed in further detail below, the Court's ruling on the statute of limitations issue critically depends upon the precise type of § 1983 claim being asserted (*e.g.*, a malicious prosecution claim, a *Brady* suppression of exculpatory evidence claim, a coerced confession claim, a deliberate fabrication of evidence claim, etc.). Unfortunately, Plaintiff has not provided a clear answer. The relevant portion of Plaintiff's Third Amended Complaint ("TAC") alleges as follows:

FEDERAL CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. § 1983

5.1    Scherschligt's conduct constitutes deprivation of Ted Louis Bradford's federally protected rights under color of law, including the rights guaranteed under the Sixth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983, by engaging in improper identification practices, using investigative techniques that were so coercive and abusive that he knew or should have known

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8

> would lead to a false confession, and by continuing his investigation of Bradford even though he knew or should have known that Bradford was innocent of the rape of K.S. and the burglary of her home. Defendant Scherschligt's violation of Bradford's constitutionally protected rights was done maliciously, with deliberate indifference, and with reckless disregard for his constitutional rights. As a direct and proximate result of Scherschligt's deliberate indifference to Bradford's constitutional rights, he has suffered damages including punitive damages in an amount to be proven at trial.

ECF No. 18 at ¶ 5.1. The TAC does not otherwise label the claim, identify the specific constitutional right(s) at issue, or suggest what elements of the claim Plaintiff would be required to prove at trial.

Plaintiff's more recent descriptions of the claim are similarly ambiguous. In his opposition briefing, Plaintiff refers to the claim generically as a "wrongful conviction" claim. ECF No. 29 at 1, 11, 12. There are, of course, many different types of Sixth and Fourteenth Amendment violations that could result in a "wrongful conviction," so this description is not particularly helpful.

At the motion hearing, Plaintiff described the claim as being "akin" to a malicious prosecution claim for statute of limitations purposes, but went on to explain that the claim itself was "as described in" *Gantt v. City of Los Angeles*, 717 F.3d 702 (9th Cir. 2013)." Later, after Defendants filed a supplemental brief arguing that Plaintiff's statute of limitations analysis was flawed because Plaintiff had not actually asserted a malicious prosecution claim (*see* ECF No. 51 at 1-2)— and after the Court invited Plaintiff to respond to that argument (*see* ECF No.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

1  52)—Plaintiff simply reiterated that "his claims . . . are similar to those described
2  by the Ninth Circuit in *Gantt*."  ECF No. 53 at 4.

3      Since Plaintiff has repeatedly invoked *Gantt*, the Court will begin its
4  analysis there.  *Gantt* involved a host of discrete § 1983 claims asserted by two
5  different plaintiffs.  There were six claims that survived summary judgment and
6  proceeded to trial: (1) a malicious prosecution claim; (2) a suppression of
7  exculpatory evidence (*Brady*) claim; (3) a deliberate fabrication of evidence claim;
8  (4) a failure to gather and preserve evidence claim; (5) a claim for use of
9  unconstitutional identification procedures; and (6) a claim for conspiracy to violate
10 constitutional rights.  717 F.3d at 706.  Following a jury verdict in favor of the
11 defendants, the plaintiffs appealed.   The Ninth Circuit reversed as to three
12 claims—the *Brady* claim, the deliberate fabrication of evidence claim, and the
13 conspiracy to violate constitutional rights claim—holding that the district court had
14 issued erroneous jury instructions on those claims.  *Id.* at 707-09.  The Court
15 summarily affirmed as to the remaining three claims.  *Id.* at 709.

16     Because *Gantt* involved several discrete § 1983 claims, Plaintiff's reliance
17 on the case does not shed much light on what type of claim he is attempting to
18 assert here.  Given that Plaintiff has abandoned his *Brady* claim[3] and did not allege

19 _____
   [3] In a letter brief filed at ECF No. 55, Plaintiff argues that there are "numerous"
20 facts that support a *Brady* claim.  As Defendants correctly note, however, Plaintiff

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 10

the existence of a conspiracy, however, the universe of potential claims can be reduced to (1) malicious prosecution; (2) deliberate fabrication of evidence; (3) failure to gather and preserve evidence; and (4) use of unconstitutional identification procedures. Since only one of those four—the deliberate fabrication of evidence claim—was substantively addressed in the *Gantt* opinion itself, the most logical conclusion is that Plaintiff is seeking damages on a deliberate fabrication of evidence theory. This conclusion is further reinforced by the fact that the allegations in the TAC closely track the language used by the Ninth Circuit to describe the deliberate fabrication of evidence claim in *Gantt*:

//

//

//

---

deliberately removed all *Brady*-related allegations from his TAC. *See* Footnote 2, *supra*. Indeed, the absence of *Brady*-related allegations is the only material difference between the Second Amended Complaint and the TAC. Thus, the only logical conclusion that can be drawn from the filing of the TAC is that Plaintiff intended to abandon any *Brady*-based claim. It also bears noting that Defendants noted the withdrawal of a *Brady* claim in their summary judgment briefing and at oral argument without any objection from Plaintiff.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 11

| Third Amended Complaint | *Gantt v. City of Los Angeles* |
|---|---|
| "[Scherschligt violated Plaintiff's Sixth and Fourteenth Amendment rights] by engaging in improper identification practices, using investigative techniques that were <u>so coercive and abusive that he knew or should have known would lead to a false confession</u>, and by *continuing his investigation . . . even though he knew or should have known that [Plaintiff] was innocent[.]*"<br><br>Pl.'s TAC, ECF No. 18, at ¶ 5.1 (emphasis added). | "[To prevail on a deliberate fabrication of evidence claim], a plaintiff must, at a minimum, point to evidence that supports at least one of the following two propositions: (1) Defendants *continued their investigation of [the plaintiff] despite the fact that they knew or should have known that he was innocent*; or (2) Defendants used investigative techniques that were <u>so coercive and abusive that they knew or should have known that those techniques would yield false information.</u>"<br><br>*Gantt*, 717 F.3d at 707 (emphasis added). |

Furthermore, the allegations in the TAC do not state a claim for malicious prosecution. There are five elements to a malicious prosecution claim under Washington law:

> (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution.

*Hanson v. City of Snohomish*, 121 Wash.2d 552, 558 (1993). "In general, a claim of malicious prosecution is not cognizable under § 1983 if process is available within the state judicial systems to provide a remedy." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 919 (9th Cir. 2012) (en banc). There is an exception to this rule, however, for prosecutions that are "conducted with the intent to . . . subject a

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 12

1    person to a denial of [federal] constitutional rights." *Id.* (quotation and citation

2    omitted).  Thus, in order to prevail on a malicious prosecution claim under § 1983,

3    a plaintiff must prove, in addition to the elements of a state law malicious

4    prosecution claim, that the defendant prosecuted him "for the purpose of denying

5    him equal protection or another specific constitutional right." *Lassiter v. City of*

6    *Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009) (internal quotations and citations

7    omitted); *see also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004)

8    (explaining that the Ninth Circuit "ha[s] incorporated the relevant elements of the

9    common law tort of malicious prosecution into our analysis under § 1983") (citing

10   *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987)).

11        The TAC does not state a claim for malicious prosecution because it does

12   not allege that the criminal proceedings against Plaintiff were initiated or continued

13   without probable cause.  Indeed, Plaintiff's confession to having committed the

14   rape and burglary in 1996 would seem to preclude an allegation that probable

15   cause was lacking.[4]  Nor has Plaintiff alleged that an exception to the probable

16   ─────────────────
     [4] The Court acknowledges that this confession is alleged to have been a "false

17   confession" obtained through coercion and other improper interrogation

18   techniques.  *See* ECF No. 18 at ¶¶ 4.9-4.13; ECF No. 30 at 6-12.  As Defendants

19   note, however, the state trial and appellate courts addressed this issue on three

20   separate occasions and ruled each time that the confession was voluntary.  *See* ECF

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 13

1    cause requirement applies.  *See Hanson*, 121 Wash.2d at 560 ("[A] conviction,

2    although later reversed, is conclusive evidence of probable cause, unless that

3    conviction was obtained by fraud, perjury or other corrupt means[.]").

4         Based upon the foregoing, the Court concludes that Plaintiff has asserted a

5    claim for deliberate fabrication of evidence as discussed in *Gantt*.   The Court

6    further concludes that Plaintiff has not properly alleged a claim for malicious

7    prosecution under § 1983.

8    //

9

10   No. 22 at ¶¶ 25-29, 37, 51-52; *Bradford*, 95 Wash. App. at 944-51 (holding that the

11   admission of Plaintiff's confession at the first trial did not violate Plaintiff's Fifth,

12   Sixth or Fourteenth Amendment rights, and that the State's failure to timely

13   produce Plaintiff for an arraignment scheduled for the day he confessed did not

14   render his confession involuntary).  Plaintiff is bound by this determination under

15   the doctrine of collateral estoppel.  *See Hanson*, 121 Wash.2d at 561-63 (holding

16   that collateral estoppel barred malicious prosecution plaintiff from asserting

17   exception to probable cause requirement based upon alleged use of

18   unconstitutional identification procedures where constitutionality of procedures

19   had been fully litigated and resolved against the plaintiff in the underlying criminal

20   case).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 14

   2.  <u>Did *Heck* bar Plaintiff's § 1983 claim until he was acquitted?</u>

*Heck v. Humphrey* is grounded in the "hoary principle" that tort actions under 42 U.S.C. § 1983 "are not appropriate vehicles for challenging the validity of outstanding criminal judgments." 512 U.S. at 486. *Heck* holds that any § 1983 claim that, if successful, would "necessarily imply" the invalidity of a criminal conviction is not cognizable unless the conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. As relevant here, the case further explains that such a claim is not cognizable *until* the conviction has been invalidated:

> We do not engraft an exhaustion requirement upon § 1983, but rather *deny the existence of a cause of action*. Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless *and until* the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. . . . Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim *has not yet arisen*. Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor . . . so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence *does not accrue until the conviction or sentence has been invalidated*.

*Id.* at 489-90 (emphasis added) (internal citations and footnotes omitted). In other words, *Heck* effectively defers the accrual of a claim that implicates the validity of

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 15

a conviction until the conviction has been invalidated.  Once the conviction has been invalidated, the claim accrues and the statute of limitations begins to run. *Wallace*, 549 U.S. at 393.

There can be no serious dispute that Plaintiff's claim was originally barred under *Heck* because the claim squarely implicates the validity of Plaintiff's conviction and sentence.  The primary point of contention is when the *Heck* bar was lifted—that is to say, when the claim accrued.  Defendants maintain that the bar was lifted when Plaintiff's conviction and sentence were formally vacated on August 1, 2008.  ECF No. 21 at 7-8.  In Plaintiff's view, the bar remained in force until he was eventually acquitted on February 11, 2010.  ECF No. 29 at 3-12.  Not surprisingly, the timeliness of the claim hinges on which of these two dates controls.

Having carefully reviewed the applicable authorities, the Court concludes that the claim is untimely.  Plaintiff contends that *Heck* continued to bar his claim because the State continued to prosecute him after his conviction and sentence were vacated.  Though not expressed in such terms, the crux of Plaintiff's argument is that *Heck* continues to bar a § 1983 claim arising from an overturned conviction so long as there remains a possibility that he will be retried and convicted for a second time.  *See* ECF No. 29 at 3 (arguing that the *Heck* bar persists until "the criminal case at the heart of the civil [suit] has 'been disposed of

1    in a way that indicates the *innocence* of the accused.'" (emphasis added) (quoting

2    *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009)).

3        This reasoning cannot be squared with the Supreme Court's decision in

4    *Wallace*.  There, the Court was asked to decide when a claim for wrongful arrest

5    under § 1983 accrued.  The defendants argued that the claim accrued when the

6    petitioner appeared before a magistrate and was bound over for trial (the moment

7    at which a wrongful arrest claim would ordinarily accrue).  The petitioner, on the

8    other hand, argued that the claim did not accrue until the charges against him were

9    eventually dropped and there was no longer a possibility that he might be

10   convicted.  *Wallace*, 549 U.S. at 392.  The Court rejected the latter argument,

11   noting that *Heck* "is called into play only when there exists a conviction or

12   sentence that has *not* been invalidated, that is to say, an **outstanding criminal**

13   **judgment**."  *Id.* at 393 (bold emphasis added) (internal quotations, citations and

14   modifications omitted).  Applying the *Heck* bar in the absence of an outstanding

15   criminal judgment, the Court concluded, would be a "bizarre extension" of *Heck*:

16       What petitioner seeks . . . is the adoption of a principle that goes well
         beyond *Heck*: that an action which would impugn ***an anticipated***

17       ***future conviction*** cannot be brought until that conviction occurs and
         is set aside.  The impracticality of such a rule should be obvious.  In

18       an action for false arrest it would require the plaintiff (and if he brings
         suit promptly, the court) to speculate about whether a prosecution will

19       be brought, whether it will result in conviction, and whether the
         pending civil action will impugn that verdict—all this at a time when

20       it can hardly be known what evidence the prosecution has in its
         possession.  **And what if the plaintiff (or the court) guesses wrong,**

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 17

**and the anticipated future conviction never occurs, because of acquittal or dismissal?** Does that event (instead of the *Heck*-required setting aside of the extant conviction) trigger accrual of the cause of action? Or what if prosecution never occurs—what will the trigger be then?

*Id.* at 393 (bold emphasis added).

Plainly stated, *Wallace* holds that the mere prospect of a future conviction does not bar a claim under *Heck*. That rule is easily applied to the circumstances presented here: a plaintiff seeking damages for an allegedly unlawful conviction after the conviction has been formally vacated. Returning to first principles, the plaintiff's cause of action accrues at the moment the conviction is vacated. *Heck*, 512 U.S. at 489. As of that moment, the plaintiff (and any court in which he might file a § 1983 claim) can only "speculate about whether a [second] prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict."[5] *Id.* at 393. Nor can the plaintiff (or the court) be certain whether the offending evidence will be introduced in or have any bearing upon a second prosecution. As explained in *Wallace*, barring the claim in this circumstance would be a "bizarre" and "impractical" extension of *Heck* because it

_____

[5] Indeed, the possibility of a second conviction would seem particularly tenuous where, as here, the conviction has been reversed based upon the discovery of new evidence that a reviewing court has determined would "probably [have] change[d] the result of the trial." *In re: Bradford*, 140 Wash. App. at 130.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 18

would make the claim's accrual date contingent upon the outcome of any further criminal proceedings. Specifically, if the plaintiff is retried and convicted for a second time, then *Heck* would defer accrual of the claim until the second conviction is overturned. If the plaintiff is retried and acquitted, on the other hand, then *Heck* could never have applied in the first instance because there was no "outstanding criminal judgment" in place during the pendency of the retrial proceedings. In this latter scenario, the claim would necessarily have accrued at some point prior to the plaintiff's acquittal—months or even years earlier, depending upon the duration of the retrial proceedings. The critical point here is that the claim would either accrue *in the future* if the plaintiff is convicted for a second time or *in the past* if he is acquitted. The latter result is plainly untenable because it could leave the plaintiff with little or no time left on the statute of limitations clock after he is acquitted.

Plaintiff argues that the solution to this problem is simply to leave the *Heck* bar in place until the plaintiff is acquitted (or until the charges are permanently dismissed). The Sixth Circuit has rejected a nearly identical argument based upon the reasoning articulated in *Wallace*. The plaintiff in *D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014), was convicted of first-degree murder and sentenced to death in 1989. In 2006, the plaintiff secured a conditional writ of habeas corpus based upon the prosecution's failure to disclose material exculpatory evidence in

violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The writ required the prosecution to either set aside the conviction or retry the case. The prosecution moved forward with a retrial, but proceeded to engage in further prosecutorial misconduct. As a result of the continued misconduct, the habeas court granted the plaintiff an unconditional writ permanently dismissing the charges in March 2010. Fourteen months later, in May 2011, the plaintiff filed a § 1983 action seeking damages for the *Brady* violations at his first trial. The defendants moved to dismiss the suit on statute of limitations grounds, arguing that the issuance of the conditional writ in 2006 "called [the conviction] into question" under *Heck* and therefore triggered the running of the statute of limitations. *Id.* at 384. The district court rejected this argument, but dismissed the case on other procedural grounds.

The plaintiff appealed to the Sixth Circuit, which revisited the statute of limitations issue. As he had argued in the district court, the plaintiff contended that the statute of limitations was not triggered until the underlying criminal charges were "terminated" in his favor in 2010—that is to say, until he could no longer have been retried for and potentially re-convicted of first-degree murder. *Id.* at 384. The appellate court squarely rejected this argument:

> Under *Heck*, a cause of action under § 1983 that would imply the invalidity of a conviction does not accrue until the conviction is reversed or expunged, and therefore the statute of limitations does not begin to run until such an event occurs, if ever. **What might happen in a subsequent prosecution is neither here nor there; the claim accrues as soon as the only obstacle to the litigation—the adverse**

**judgment—has been lifted.** D'Ambrosio's argument that *Heck* tolls the accrual of his claims until the state cannot possibly retry him runs flatly counter to the Supreme Court's decision in *Wallace*, which rejected the argument that "an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside." 549 U.S. at 393. . . .

**We see no reason not to apply *Wallace*'s pretrial principles to the retrial context**, as D'Ambrosio's position requires the same "speculat[ion] about whether a prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict" that was fatal to the petitioner's position in *Wallace*. *Id.* at 393. Contrary to D'Ambrosio's argument, the possibility that his § 1983 claims might impugn an anticipated future conviction does not trigger the *Heck* rule for deferred accrual.

*Id.* at 384-85 (bold emphasis added) (internal quotations, citations and alterations omitted).[6]

Although *D'Ambrosio* is not binding authority, the Court finds its reasoning persuasive. Consistent with this reasoning, the Court concludes that a claim arising from an overturned conviction is not *Heck*-barred by the continued pendency of criminal charges. Once the conviction has been formally vacated, the plaintiff faces no more than an "anticipated future conviction." *Wallace*, 549 U.S. at 393. It makes no difference whether the plaintiff is later convicted for a second time or acquitted, or whether the charges are dismissed; because there is no longer

---

[6] The court did, however, rule in the plaintiff's favor on alternate grounds: that his conviction had not been formally "vacated" until the unconditional writ issued in 2010. *D'Ambrosio*, 747 F.3d at 385.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 21

1    an "outstanding criminal conviction," the *Heck* deferred accrual rule no longer

2    applies. *Id.*; *D'Ambrosio*, 747 F.3d at 384-85.

3         This conclusion is further supported by two recent Ninth Circuit decisions

4    applying *Heck* in the vacated conviction context. In *Jackson v. Barnes*, 749 F.3d

5    755 (9th Cir. 2014), the court examined the viability of a § 1983 claim asserted by

6    a plaintiff whose rape and murder convictions had been vacated due to a *Miranda*

7    violation. Because the plaintiff was subsequently retried and re-convicted of the

8    same offenses, the court explained, it was possible that the claim was *Heck*-barred.

9    Applying *Heck*, the court framed the issue as whether success on the § 1983 claim

10   arising from the *Miranda* violation at the plaintiff's first trial would "necessarily

11   imply" the invalidity of the convictions resulting from the second trial. *Jackson*,

12   749 F.3d at 760. The court concluded that *Heck* did not apply because the second

13   trial was "insulated" from the constitutional violation that occurred at the first trial:

14        In this case it is Jackson's second conviction for first degree murder
     that is outstanding. It is undisputed that the second conviction was
15        insulated from the inculpatory statements that are the subject of
     Jackson's § 1983 suit[.] The first conviction is the case in which the
16        Fifth Amendment violation occurred. Therefore a judgment in
     Jackson's favor would—far from "necessarily imply[ing]" the
17        invalidity of his second conviction—not have any bearing on it. The
     only conviction a judgment in Jackson's favor would bear on is his
18        first conviction, which *was* "called into question by a federal court's
     issuance of a writ of habeas corpus." In fact, more than "called into
19        question," it was reversed. Thus, Jackson's § 1983 claim . . . for the
     Fifth Amendment violation is not barred by *Heck*.

20

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 22

1    *Id.* (emphasis in original) (citation omitted).  Critically, the court further concluded

2    that the claim accrued "when [the plaintiff's] first conviction was overturned in

3    March 2004."  *Id.* at 761.  Given that the plaintiff had filed the claim within six

4    months of that date, the court explained, the claim was not time-barred.  *Id.*

5         *Rosales-Martinez v. Palmer*, --- F.3d ---, 2014 WL 2462557 (9th Cir., June

6    3, 2014), presented an analogous fact pattern.  The plaintiff in *Rosales-Martinez*

7    was convicted of drug trafficking offenses in July 2004.  On December 2, 2008, a

8    state court granted the plaintiff a writ of habeas corpus upon concluding that the

9    prosecution violated *Brady* by failing to disclose critical impeachment evidence.

10   On that same date, the plaintiff pled guilty to one count of unlawful giving away of

11   a controlled substance (the least serious of the offenses for which he had originally

12   been convicted) in exchange for a sentence of time served and permanent dismissal

13   of the remaining charges.  *Rosales-Martinez*, 2014 WL at * 3.  On December 1,

14   2010, just shy of two years after his habeas petition was granted, the plaintiff filed

15   a § 1983 claim seeking damages for the *Brady* violation at his 2004 trial.

16        The district court dismissed the claim as untimely, reasoning that the claim

17   accrued (and the two-year statute of limitations applicable to § 1983 claims in

18   Nevada began to run) when the plaintiff learned of the *Brady* violation while he

19   was still incarcerated—necessarily more than two years prior to the date on which

20   the claim was filed.  *Id.* at *1.  The Ninth Circuit reversed.  Citing to *Jackson*, the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 23

court explained that "a prisoner's claim does not accrue until his sentence is invalidated, necessarily a later date than when he learned of the prosecutor's unlawful actions." *Id.* at *5. Given that the claim had been filed just under two years after the plaintiff's conviction was vacated, the court explained, the claim was timely. *Id.* at *6. The Court then remanded the case to the district court to perform the *Heck* analysis required under *Jackson—i.e.*, whether success on the claim arising from the first conviction would necessarily imply the invalidity of the second conviction. *Id.* at *7-*8.

The relevant take-away from *Jackson* and *Rosales-Martinez* is that a § 1983 claim arising from an overturned conviction accrues, and the statute of limitations begins to run, when the conviction is formally invalidated. *Jackson*, 749 F.3d at 761; *Rosales-Martinez*, 2014 WL at *5-*6. When the prosecution succeeds in obtaining a second conviction, a thorny complication arises under *Heck*: whether success on the claim arising from the *first* conviction would "necessarily imply" the invalidity of the *second* conviction. *Jackson*, 749 F.3d at 760; *Rosales-Martinez*, 2014 WL at *7-*8. But that complication does not arise in this case. Given that the prosecution failed to obtain a second conviction, there is simply no reason to bring *Heck* back into the fold. Plaintiff's claim accrued on August 1, 2008, when his conviction was formally vacated. As of that date, *Heck* no longer barred his claim.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 24

At the motion hearing, Plaintiff argued that a claim arising from an overturned conviction cannot accrue under *Heck* until the underlying criminal charges are "favorably determined in [the plaintiff's] favor."  In support of this argument, Plaintiff cited several cases which examine when the statute of limitations begins to run on a malicious prosecution claim arising from an overturned conviction.  Plaintiff's reliance on these cases is unavailing for two reasons.  First, as addressed in detail above, Plaintiff has not asserted a malicious prosecution claim.  At the hearing and in his supplemental briefing, Plaintiff made clear that while his claim is "akin" to a malicious prosecution claim, the claim is actually a deliberate fabrication of evidence claim of the type addressed in *Gantt v. City of Los Angeles*, 717 F.3d 702 (9th Cir. 2013), and *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir.2001) (en banc).[7]

_____

[7] The Court has located one case, *Doggett v. Perez*, which holds that a deliberate fabrication of evidence claim does not accrue until the charges against the plaintiff are formally dismissed, as opposed to the date on which the plaintiff's conviction is vacated.  348 F. Supp. 2d 1169, 1173 (E.D. Wash. 2004).  *Doggett* is no longer good law on this point because the case upon which it relied, *Harvey v. Waldron*, 210 F.3d 1008 (9th Cir. 2000), was effectively overruled by *Wallace*.  *See Szajer v. City of Los Angeles*, 632 F.3d 607, 611 (9th Cir. 2011) (recognizing overruling);

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 25

Second, these cases are inapposite because *Heck* has no bearing on the accrual of a malicious prosecution claim.  Like all claims that could be brought to remedy an unconstitutional conviction, a malicious prosecution claim accrues when the plaintiff has a "complete and present cause of action," *i.e.*, when the plaintiff knows or has reason to know of the facts necessary to prove each element of the claim.  *Wallace*, 549 U.S. at 388.  A malicious prosecution claim is different from all other claims, however, in that it requires the plaintiff to prove, *as an element of the claim*, that the criminal proceedings have been "terminated on the merits" in his favor.  *Hanson v. City of Snohomish*, 121 Wash.2d 552, 558 (1993); *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009).  Thus, unlike other claims, a malicious prosecution claim does not accrue—and the statute of limitations does not begin to run—until the criminal proceedings have been terminated on the merits in the plaintiff's favor.

As a result of this "favorable termination" requirement, *Heck* can never bar a malicious prosecution claim.  As the Supreme Court explained in *Wallace*, *Heck* is a *deferred* accrual rule; it postpones the accrual of claims that would otherwise have accrued but for the plaintiff's "outstanding criminal judgment."  549 U.S. at 393.  Critically, *Heck* cannot defer the accrual of a malicious prosecution claim

*Rivas v. Cal. Franchise Tax Bd.*, 619 F. Supp. 2d 994, 1000 (E.D. Cal. 2008) (same).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 26

because the claim would not *otherwise* have accrued but for the plaintiff's extant conviction. Because the plaintiff does not have a "complete and present cause of action" for malicious prosecution in the first instance, there is nothing for *Heck* to bar. Consequently, to whatever extent the cases cited by Plaintiff suggest that *Heck* is relevant to the accrual of a malicious prosecution claim, their reasoning is in error. Although a malicious prosecution claim will sometimes accrue at the same time as a *Heck*-barred claim (*e.g.*, when the plaintiff's conviction is vacated and the underlying charges are simultaneously dismissed with prejudice), *Heck* is wholly irrelevant to the accrual inquiry.

At bottom, Plaintiff has sought to import a favorable termination requirement into the *Heck* analysis for claims arising from an overturned conviction. This cannot be done. *Heck*, by its terms, bars an otherwise cognizable claim only until the plaintiff's conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 487. There is no requirement, express or implied, that the criminal proceedings be terminated on the merits in the plaintiff's favor. And while such a requirement does exist for malicious prosecution claims, it has nothing whatsoever to do with *Heck*. Accordingly, the Court concludes that the statute of limitations on Plaintiff's § 1983 claim began to run when his

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 27

conviction was formally vacated by the Yakima County Superior Court on August 1, 2008. The fact that the State unsuccessfully pursued a second conviction is of no consequence to the statute of limitations analysis. Thus, the three-year statute of limitations expired on August 1, 2011. Because Plaintiff did not file this lawsuit until eighteen months later, Defendants are entitled to summary judgment.

## B. State Law Claims

The statute of limitations on Plaintiff's state law claims for negligent training and supervision and intentional infliction of emotional distress is three years. RCW 4.16.080(2); *Cox v. Oasis Physical Therapy*, PLLC, 153 Wash. App. 176, 192 (2009). Unlike Plaintiff's § 1983 claim, these claims are not subject to deferred accrual under *Heck*. Consequently, these claims are even more untimely than the § 1983 claim unless their accrual was delayed for a different reason.

Plaintiff argues that these claims are timely under the so-called discovery rule because he "discovered additional causes of action" while conducting discovery in this case. ECF No. 29 at 1. Specifically, Plaintiff asserts that, before conducting discovery, he did not know that (1) "Scherschligt had blindly relied on Ruegsegger's false interpretation of an incorrectly conducted polygraph examination"; (2) "Scherschligt had told [K.S.] that he had a prisoner in custody who had confessed to the rape, driven a white car, and matched [her description of the suspect] all before Scherschligt had even shown [K.S.] the montage that

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 28

1   contained [Plaintiff's] photograph"; and (3) "that [K.S.] would deny the

2   prosecutor's representations during the second trial that [K.S.] had suddenly

3   remembered an additional sighting of [a suspect matching Plaintiff's description],

4   this time with a 'mask.'" ECF No. 29 at 14.  Given that he did not learn of these

5   facts until recently, Plaintiff argues, his state law claims for negligent supervision

6   and outrage must be deemed timely under the discovery rule.

7        Plaintiff cites no authority for the proposition that new or "corroborative"

8   information obtained during discovery can be used to "refresh" the statute of

9   limitations on an otherwise expired claim.  This Court has been unable to locate

10  any.  The reason for this dearth of authority should be self-evident.  As a threshold

11  matter, in the absence of a bona fide dispute about when discovery of a complete

12  and present cause of action occurred—*i.e.*, when the plaintiff discovered, or in the

13  exercise of reasonable diligence should have discovered, the essential elements of

14  his claim, *see 1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wash.2d 566, 576-

15  77 (2006)—the plaintiff is not entitled to conduct discovery on expired claims.

16  Indeed, the defendant is entitled to summary dismissal of such claims at the earliest

17  possible stage without being forced to endure pointless discovery.  Moreover, even

18  when discovery is needed to resolve a factual dispute about when the plaintiff

19  discovered the essential elements of his claim, the plaintiff should not be permitted

20  to resurrect the claim by relying upon "newly discovered" or "corroborative" facts

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 29

unrelated to when the original cause of action first came into existence.  A contrary rule would encourage plaintiffs to charge ahead with stale claims in hopes of finding a sliver of new information that could be used to defeat a statute of limitations defense.

Based upon the absence of relevant authority and the policy considerations noted above, the Court concludes that Plaintiff's state law claims were not timely filed.  These claims must also be dismissed.

**C. Defendants' Remaining Contentions**

In light of the foregoing, the Court need not address Defendants' contentions with respect to issue preclusion, the public duty doctrine, qualified immunity and the evidentiary support for Plaintiff's outrage claim.

**IT IS HEREBY ORDERED:**

Defendants' motion for summary judgment (ECF No. 21) is **GRANTED**. Plaintiff's claims are hereby **DISMISSED** with prejudice.

The District Court Executive is hereby directed to enter this Order, provide copies to counsel, enter **JUDGMENT** for Defendants, and **CLOSE** the file.

**DATED** July 7, 2014.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 30