1

2

3

4

5        UNITED STATES DISTRICT COURT

6        EASTERN DISTRICT OF WASHINGTON

7   TED LOUIS BRADFORD,

8                        Plaintiff,          NO:  13-CV-3012-TOR

9       v.                                    ORDER ON DEFENDANT'S
                                              MOTION FOR SUMMARY
10  JOSEPH SCHERSCHLIGT,                       JUDGMENT

11                       Defendant.

12        BEFORE THE COURT is Defendant's Motion for Summary Judgment

13  (ECF No. 98).  This matter was heard with oral argument on May 6, 2016.

14  Plaintiff was represented by Leonard J. Feldman and Michael S. Wampold.

15  Defendant was represented by Robert L. Christie and Alexander J. Casey.  The

16  Court has reviewed the briefing and the record and files herein; heard from

17  counsel, and is fully informed.

18                        **BACKGROUND**

19        This case arises from the 1996 conviction of Bradford for first-degree rape

20  and first-degree burglary.  In August 2008, after Bradford spent more than nine

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

years incarcerated, his conviction and sentence were vacated after DNA testing excluded him as a contributor of genetic material found at the crime scene. Subsequently, prosecutors amended the charges and tried the case for a second time. On February 11, 2010, a jury acquitted Bradford of all charges.

Bradford filed the instant lawsuit on February 7, 2013. ECF No. 1. His Third Amended Complaint asserted constitutional and state law claims against the detective who investigated the rape, Joseph Scherschligt, and the detective's employer, the City of Yakima. ECF No. 18.

On July 7, 2014, this Court dismissed Bradford's action after finding that his claims were time-barred. ECF No. 59. Bradford timely appealed. ECF Nos. 62; 63.

On September 25, 2015, the Ninth Circuit reversed this Court's dismissal and remanded the case for the Court to consider in the first instance whether Defendant is entitled to qualified immunity. ECF No. 72. The mandate returning jurisdiction to this Court was issued November 16, 2015. ECF No. 75.

On December 18, 2015, Bradford filed his Fourth Amended Complaint, which omits the City of Yakima as a defendant and seeks damages for federal civil rights violations under 42 U.S.C. § 1983. ECF No. 85. Specifically, Bradford alleges Defendant Scherschligt violated his rights guaranteed by the Sixth and Fourteenth Amendments by (1) "engaging in improper identification practices,

using investigative techniques that were so coercive and abusive that he knew or

should have known would lead to a false confession, by continuing his

investigation of Bradford even though he knew of should have known that

Bradford was innocent of the rape of K.S. and the burglary of her home," and (2)

"by withholding material exculpatory evidence prior to Bradford's June 1996

trial." *Id.* at ¶ 5.1.

In the instant motion, Defendant Scherschligt moves for summary judgment

on all claims. ECF No. 98.

## FACTS[1]

On September 29, 1995, K.S. was sexually assaulted in her home in Yakima,

Washington. During the attack, the assailant, who covered his face with a

stocking, handcuffed K.S.'s hands behind her back and made her wear a theatrical

facemask with a piece of tape covering the eye holes. ECF No. 104-1, Ex. 2 at 6-7.

K.S. described her assailant as a white male in his mid-20s, 6 feet in height, 220

_____

[1] The following facts are the undisputed material facts, unless otherwise noted. For

purposes of summary judgment, "the Court may assume that the facts as claimed

by the moving party are admitted to exist without controversy except as and to the

extent that such facts are controverted by the record set forth [in the non-moving

party's opposing statement of facts]." LR 56.1(d).

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

pounds in weight, with black hair, no facial hair, "very stocky" and "muscular." ECF No. 101-1, Ex. A at 2.

The initial September 29, 1995 Incident Report, signed by first responder Officer Hipner, states that a neighbor named "Sue" at 3008 Barge reported that in "May '95 she had a 'Peeping Tom' who had been looking in her bedroom window. 'Sue' stated that police arrived and checked area but no report was taken. She remembered the suspect having black hair and being white or Hispanic." *Id*. at 5.

Detective Scherschligt was assigned to investigate the rape and burglary. *See* ECF No. 104-1, Ex. 1. In October 1995, Detective Scherschligt drafted an inter-office memorandum discussing suspect leads. ECF No. 101-1, Ex. D. The memo relevantly states that "[a] neighbor advises that she flushed a peeping Tom out of her back yard in approx. April of this year" and around the same time "she and a friend walked in the mornings in the area [] and she noticed a white male driving a white smaller car several mornings." *Id*. Another resident "observed a subject matching suspect's description during the same time frame the suspect would have fled the crime scene …. Victim and witness both state that this subject appeared to be very broad at the shoulders, but not fat." *Id.*

The memo did not provide the names of either witness. However, Detective Scherschligt's October 1995 Detail Report documents that on October 5th he spoke with Clara Fisher, a resident of K.S.'s neighborhood, who reported observing a

"male subject" near the crime scene on the day of the rape. ECF No. 104-1, Ex. 1 at 3. It also reports Ms. Fisher visited the Yakima Police Department to work with a police sketch artist to complete a composite photo (sketch). *Id.* The October 1995 report does not state that Detective Scherschligt spoke with or interviewed a neighbor named "Sue." It does state that on October 3 and 4, 1995, "[Detective Scherschligt] attempted to contact several neighbors on Barge and on Yakima Avenue with negative results. Of the subjects [he] spoke with, they were either not home or did not observe anything out of the ordinary that day." *Id.* at 2.

In March 1996, Detective Rodney Light of the Yakima Police Department was investigating several reports of lewd conduct and indecent exposure incidents in the same neighborhood as the rape. ECF No. 104-2, Ex. 14. One of the victims provided a license plate number which matched Bradford's white 1994 Toyota Tercel. *Id.* at 1-2.

On March 11, 1996, Detective Light questioned Bradford about the lewd conduct crimes, first at his place of employment and later at the police station. *Id.* at 2-4. Bradford confessed to engaging in a series of lewd acts, where he would expose himself to girls and women while walking down the street or driving

around in his white Toyota car.[2]  ECF No. 104-2, Ex. 15.  He admitted to engaging

in this conduct as early as May 1995 and continuing through early March 1996.[3]

ECF Nos. 100-2, Ex. J at 53:14-54:8, 55:6- 55:22; 104-2, Ex. 15.

---

[2] Bradford does not dispute that he confessed to indecent exposure incidents in the

neighborhood of the rape, but objects to the admissibility of these crimes as not

relevant, unduly prejudicial, and improper character evidence pursuant to the

Federal Rules of Evidence.  *See* ECF Nos. 102 at 10; 103 at 38.  The Court

disagrees.  In connection to his deliberate fabrication of evidence claim, Bradford

argues Detective Scherschligt knew or should have known he was innocent of the

rape.  Consequently, the lewd conduct charges and confession are relevant

concerning Detective Scherschligt's motivation in identifying and pursuing

Bradford as a suspect during the investigation.  As such, evidence of these crimes

is relevant to the issues before the Court and, thus, admissible.  *See United States v.*

*Abel,* 469 U.S. 45, 54 (1984) ("A district court is accorded a wide discretion in

determining the admissibility of evidence under the Federal Rules. Assessing the

probative value of [the proffered evidence], and weighing any factors counseling

against admissibility is a matter first for the district court's sound judgment under

Rules 401 and 403...."); *see also* Fed. R. Evid. 1101(d)(3).

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

At the end of the day on March 11, 1996, Bradford was released from questioning, after giving a statement, and permitted to go home. ECF No. 103 at 37. Three days later, Detective Light showed K.S. a photo montage with Bradford's photo in position #4. *Id.* K.S. was unable to identify anyone in the montage. *Id.*

On March 31, 1996, Bradford was arrested on the lewd conduct charges and booked into Yakima County Jail. *Id.* at 42. The next day, April 1, 1996, while in custody, Detectives Scherschligt and Light questioned Bradford regarding the rape of K.S. *Id.* Bradford's interrogation lasted eight and one-half hours,[4] after which Bradford confessed to the rape. *Id.* at 44-45.

On April 5, 1996, the Yakima County Prosecutor's Office filed first-degree rape and first-degree burglary charges against Bradford. *Id.* at 46-47.

---

[3] Bradford clarifies that "there is no evidence that [he] committed any crimes of indecency between July 1995 and January 1996." *See* ECF No. 103 at 38.

[4] While Bradford maintains the interrogation was abusive and coercive, *see* ECF No. 103 at 45-46, the Washington Court of Appeals has held that the Detectives' tactics did not rise to the level of a constitutional violation. *See State v. Bradford*, 95 Wash. App. 935, 944-50 (1999).

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

1    Thereafter, Detective Scherschligt continued to gather evidence. A May 10,

2    1996 Detail Report, prepared by Detective Scherschligt, sets forth the following:

3        On 4-10-96, myself and YPD lab technician B. Mcarthy went to 3006
         Barge to take some photo's of the house and basement area. I spoke

4        with a female in the area who identified herself as Susan Searl. I asked
         Ms. Searl if she had ever seen a male subject driving around the area

5        and she stated that she had. Ms. Searl said that after the rape she had
         called the police and left a message with a clerk describing a white

6        male subject driving around in the area in a small white car. She said
         that he just drove around in circles, not driving anywhere and that he

7        was very suspicious. Ms. Searl stated that she had also chased a
         prowler from her house. I asked Ms. Searl if she could identify the

8        driver and she stated that he was a younger white male, 20's with dark
         blond hair. I asked Ms. Searl to describe the car and she stated that it

9        was a small white Toyota, 2 door, in good condition, not sure of the
         year. I asked Ms. Searl if she thought that she might beable [sic] to

10       identify the subject if she were to see him again and she said yes,
         because at one point he had stopped right in front of her house

11       watching [K.S.'s] house."

12   ECF No. 101-1, Ex. F. Subsequently, Detective Scherschligt showed Ms. Searl a

13   photo montage where she picked out Bradford's photo as the subject she had seen

14   driving in the area prior to the rape.[5] *Id.* After identifying Bradford, Ms. Searl

15   related to Detective Scherschligt that she had seen him driving around the area on

16   at least six different occasions during September 1995. *Id.*

17   _____

18   [5] Pursuant to Detective Scherschligt's report, the montage consisted of six subjects

19   of "similar build and features," with Bradford in position number four. ECF No.

20   101-1, Ex. F; *see* ECF No. 101-1, Ex. B.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

1    Ms. Searl went to the Yakima Police Department to give a taped statement

2    on May 22, 1996.  *See* ECF No. 101-1, Ex. C.  In her statement, she reported she

3    saw Bradford driving through her neighborhood in "mid-September sometime"

4    approximately six different times.  *Id.* at 2.

5    Ms. Searl was the same neighbor who, on the day of the rape, provided

6    statements that in May of 1995 she had a "Peeping Tom" looking in her bedroom

7    window, *see* ECF No. 101-1, Ex. A, and who was referenced in Detective

8    Scherschligt's October Memo as the neighbor who "advises that she flushed a

9    "Peeping Tom" out of her back yard in approx. April of this year" and around the

10   same time "she and a friend walked in the mornings in the area [] and she noticed a

11   white male driving a white smaller car several mornings."  ECF No. 101-1, Ex. D.

12   The parties dispute whether the April 1996 contact was the first time

13   Detective Scherschligt met with and spoke to Ms. Searl.  Bradford alleges that

14   Detective Scherschligt first spoke to Ms. Searl in October 1995, *see* ECF No. 102

15   at 8, 16, and Detective Scherschligt maintains he first met Ms. Searl in April 1996.

16   *See* ECF No. 98 at 19.

17   In a 2006 deposition, regarding his contact with Ms. Searl, Detective

18   Scherschligt testified that he did not recall whether or not he spoke to Ms. Searl in

19   October 1995, but did not think he did, "because I didn't mention that specifically

20   in my notes."  ECF No. 100-1, Ex. A at 26:23-27:14.  After being shown his

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

October 1995 memo, Detective Scherschligt agreed that it appeared to reflect a conversation that he had with Ms. Searl: "In reading this, I apparently did speak with Susan Searl." *Id.* at 28:18-24.

During the 2010 trial, relying on his reports and notes, Detective Scherschligt testified that in October 1995 he went to the crime scene and while he was there "… I remember speaking with a neighbor who was later identified as Susan Searl." ECF No. 104-1, Ex. 3 at 13:3-5.  Detective Scherschligt testified that the conversation was "…just a few moments.  I believe she told me that she had flushed a … 'Peeping Tom' out from her residence, and then she spoke briefly of a white male subject driving around in a smaller car." *Id.* at 13:20-23.

Detective Scherschligt now argues that his testimony in 2006 and 2010, where he states he first spoke with Ms. Searl in October 1995, is mistaken, and that he actually first met with her in April 10, 1996.  ECF No. 98 at 19.  Detective Scherschligt claims that "all investigative materials" confirm it was April 1996 when they first met.  *Id.*  Detective Scherschligt specifically references his May 1996 report, discussed above, which sets forth that "[o]n 4-10-96 … I spoke with a female in the area who identified herself as Susan Searl."  ECF No. 101-1, Ex. F.

In 2014, Ms. Searl gave deposition testimony as part of this lawsuit and testified she could not recall when she first met Detective Scherschligt.  ECF No. 100-1, Ex. D at 21:7-11.  At the deposition, Ms. Searl relied on personal notes and

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

journal entries that she had created around the time of the 1996 trial. Regarding

her April 1996 contact with Detective Scherschligt, Ms. Searl testified:

> He didn't tell me anything about the man [in custody]… he asked
> me…if I knew of a neighbor that had called in earlier in the year, like
> in the fall, to the police station and told them that I had seen a man
> driving in our neighborhood, and I said, Yeah, that was me.

*Id.* at 15:3-8. Ms. Searl further testified that she was told there was a man in

custody who had confessed, but that she did not remember Detective Scherschligt

telling her that the man in custody had a white Toyota. *Id.* at 19:2-17.

Ms. Searl's journal separately recounts that one day in late October 1995, "I

remembered this man that I had seen in September in the morning when my

girlfriend and I walked." ECF No. 104-1, Ex. 6 at 6. The journal entry continued:

> …I called the police and talked to a women [sic] detective and told
> her I lived next door to the house where the rape had occurred in
> September. I described the man and the car that I had seen him driving
> around in our neighborhood. The detective took the information and
> my name and number and told me if I saw him again to let her know.

*Id*. at 6-7.

Regarding Ms. Searl's April 1996 contact with Detective Scherschligt, the

journal separately recounts that one afternoon she saw two officers at K.S.'s house

and went over to inquire whether they had caught the rapist. The journal entry

continues:

> …the detective asked me if I knew about a neighbor calling in with
> some information about a man driving around in the area in October.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1    I said yes that was me.  He asked me to describe the man that I had
2    seen while walking in the mornings in September.  I described the
     man and the car he drove and the detective said that the man they had
3    in custody fit my descriptions and drove the same car.  The detective
     asked me if could identify this man through a photo montage and I
4    said that I thought I could.

5    …

6    I looked over the first row of pictures and didn't see the man.  In the
     2nd row I saw him, the first picture in that row.  I pointed to the picture
7    and said thats the man I remember seeing.  The detective seemed
     amazed he said thats the man we have in custody.

8    *Id.* at 7-8.

9         In regards to the accuracy of these journal entries, Ms. Searl testified as

10   follows:

11        I think he said that.  I don't know for sure.  It was just my
          recollection, you know.  I don't know how many months later what
12        was said, exactly.  I – like I said, you know, I don't want people to
          think this is the gospel, because this is just me trying to remember
13        back, you know, what was it? Five months.  So I don't know exactly
          what he said or what I said…
14

15   ECF No. 100-1, Ex. D at 16:7-13.

16        Prior to the first trial, on May 28, 1996, during a pretrial hearing, Bradford's

17   lawyer Christopher Tait objected to Ms. Searl as a witness because he was not

18   aware of her April 10th statement until shortly before the hearings.  *See* ECF No.

19   104-3, Ex. 22 at 32:9-21.  During the hearing, Mr. Tait did not request additional

20   time to prepare for the trial because of the delay.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

At the first trial, Ms. Searl testified and identified Bradford as the man she saw driving a white Toyota in her neighborhood.  ECF No. 100-1, Ex. B at 1090:2-10.  She testified that shortly after the rape occurred she called the police department to inform them of this man and spoke with Detective Brenda George.  *Id.* at 1091:5-17.  Ms. Searl further testified she introduced herself to Detective Scherschligt on April 10, 1996.  *Id.* 1093:1-3.  On cross examination, Mr. Tait questioned Ms. Searl concerning the time lapse between her last sighting of the man in the white car in September 1995 and her identification of Bradford in the photo montage in April 1996.  *Id.* at 1092:22-1095:12.

Another witness called by the prosecution at the 1996 trial was Bill Mills, Bradford's work supervisor.  Mr. Mills testified that according to his records Bradford was not at work on September 29, 1995, the day of the rape.  ECF No. 107-1, Ex. B at 1036:17-1037:19.

On June 13, 1996, a jury convicted Bradford of first degree burglary and first degree rape.  ECF No. 85 at ¶ 4.16.  Following the conviction, Bradford was sentenced to 10 years in prison.  *Id*.

Bradford appealed his conviction.  The Washington Court of Appeals upheld the judgment and affirmed the constitutionality of Bradford's confession to rape.  *See State v. Bradford*, 95 Wash. App. 935 (1999), *review denied* 139 Wash.2d 1022 (2000).

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

In July 2008, a Yakima County Superior Court vacated Bradford's original judgment and sentence after concluding that post-trial DNA evidence excluding Bradford as a contributor of genetic material on evidence from the scene likely would have changed the outcome of his 1996 trial. *See* ECF No. 23-19, Ex. I.

Subsequently, in September 2008, the Yakima County Prosecuting Attorney's office re-filed charges against Bradford, ECF No. 23-19, Ex. J. After a second jury trial, Bradford was acquitted of all charges.

## DISCUSSION

In his briefing, and at oral argument, Bradford clarifies that he asserts two claims: (1) a *Devereaux* claim alleging Detective Scherschligt deliberately fabricated evidence; and (2) a *Brady* claim alleging Detective Scherschligt improperly withheld exculpatory evidence. ECF No. 102 at 1, 4 at n.1, 15. In support, Bradford argues there are numerous fact issues to preclude summary judgment on both claims.

Detective Scherschligt moves for summary judgment on all claims on the grounds of qualified immunity. ECF No. 98.

### 1. Standard of Review

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  Moreover, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Anderson,* 477 U.S. at 248.  A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and alterations omitted). Moreover, "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

Cir. 2007); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), and only evidence which would be admissible at trial may be considered, *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (internal quotation marks and brackets omitted)).

A cause of action pursuant to 42 U.S.C. § 1983 may be maintained "against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana,* 336 F.3d 885, 887 (9th Cir. 2003) (citing 42 U.S.C. § 1983). The rights guaranteed by § 1983 are "liberally and beneficently construed." *Dennis v. Higgins,* 498 U.S. 439, 443 (1991) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 684 (1978)).

//

//

### 2. Qualified Immunity

Detective Scherschligt moves for summary judgment on the grounds of qualified immunity.  Qualified immunity shields government actors from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). In evaluating a state actor's assertion of qualified immunity, a court must determine (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation such that a reasonable person in the defendant's position would have understood that his actions violated that right.  *See Saucier v. Katz,* 533 U.S. 194, 201–02 (2001) (receded from in *Pearson,* 555 U.S. 223 (holding that while *Saucier's* two step sequence for resolving government official's qualified immunity claims is often appropriate, courts may exercise their sound discretion in deciding which of the two prongs should be addressed first)). If the answer to either inquiry is "no," then the defendant is entitled to qualified immunity and may not be held personally liable for his or her conduct. *Glenn v. Washington Cnty.,* 673 F.3d 864, 870 (9th Cir. 2011).

//

//

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

### a.  Alleged Fabrication of Evidence

Bradford asserts a deliberate fabrication of evidence claim under the Fourteenth Amendment, as recognized in *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

As the Ninth Circuit has explained, "[a] *Devereaux* claim is a claim that the government violated the plaintiff's due process rights by subjecting the plaintiff to criminal charges based on deliberately-fabricated evidence." *Bradford v. Scherschligt,* 803 F.3d 382, 386 (9th Cir. 2015) (citations omitted).  To state such a claim, Bradford must point to evidence he contends Detective Scherschligt deliberately fabricated.  *Id.*  "[T]here are two 'circumstantial methods' of proving that the falsification was deliberate." *Id.* (citing *Costanich v. Dep't of Soc. & Health Servs.,* 627 F.3d 1101, 1111 (9th Cir. 2010)).  "The first method is to demonstrate that the defendant continued his investigation of the plaintiff even though he knew or should have known that the plaintiff was innocent." *Id.* (citing *Devereaux,* 263 F.3d at 1076).  "The second method is to demonstrate that the defendant used 'investigative techniques that were so coercive and abusive that [he] knew or should have known that those techniques would yield false information.' " *Id.* (quoting *Devereaux,* 263 F.3d at 1076).  A claim that Detective Scherschligt was merely careless or negligent in conducting his investigation does not suffice to satisfy the *Devereaux* standard.  *Gausvik v. Perez,* 345 F.3d 813, 817

1    (9th Cir. 2003) ("[Plaintiff] has only shown that [defendant] carelessly handled the

2    facts and the investigation.... While [defendant's] affidavit may have been careless

3    or inaccurate, it does not satisfy *Devereaux's* stringent test."); *Devereaux*, 263 F.3d

4    at 1076-77 ("Failing to follow guidelines or carry out an investigation in a manner

5    that will ensure an error-free result is one thing; intentionally fabricating false

6    evidence is quite another.").

7        Bradford argues that from the outset of his investigation Detective

8    Scherschligt pursued Bradford as the sole suspect even though a reasonable officer

9    would have known he was innocent. ECF No. 102 at 3.  In support of his

10   *Devereaux* claim, Bradford primarily relies upon the following evidence: (1)

11   "significant differences" between Bradford and the description of the rapist; (2) his

12   alibi; (3) factual inconsistencies in Bradford's confession; (4) alleged

13   inconsistencies in Ms. Searl's statements to law enforcement; and (5) Detective

14   Scherschligt's alleged misconduct during Ms. Searl's initial identification. *Id.* at 3-

15   10.

16       First, as to disparities between Bradford and the description of the rapist,

17   Bradford argues his "size and stature were nothing at all like the rapist," he "had a

18   different dominant hand than the rapist," and his "face looked nothing like the

19   sketches," and that based on these disparities a reasonable officer would have

20   known Bradford was innocent.  ECF No. 102 at 3.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

1    In the initial incident report, the rapist is described as a white male in his

2    mid-twenties, 6 feet tall, and 220 pounds, with black hair, and "very stocky," and

3    "muscular." ECF No. 101-1, Ex. A.  In relation to Bradford's lewd conduct

4    criminal charges, the suspect was described as "a white male in his 20's [sic],

5    heavy-set with short hair," ECF No. 104-2, Ex. 14 at 2, and, in the criminal

6    complaint, Bradford himself was described as a white male, 22 years old, 5 feet

7    and 8 inches tall, 225 pounds, with brown hair, and a large build.  *Id.*, Ex. 13 at 2.

8    These descriptions share obvious similarities, and a weight difference of

9    approximately 5 pounds and a height disparity of several inches are not so extreme

10   as to alert a reasonable officer that he has identified the wrong suspect.

11   Additionally, the victims' descriptions of the suspects as "very stocky" and

12   "muscular" and "heavy-set" are subjective.  Moreover, similar to the rapist, who

13   K.S. described as unable to achieve a full erection, ECF No. 104-1, Ex. 2 at 4,

14   during his confession for the lewd acts, Bradford stated that he had an "impotence

15   problem."  ECF No. 104-2, Ex. 15 at 5.  Any remaining purported differences are

16   insufficient to demonstrate that Detective Scherschligt should have known of

17   Bradford's innocence but nonetheless continued his investigation.

18        Second, Bradford maintains he had a "solid" alibi for the day of the crime.

19   ECF No. 102 at 3-4, 7.  He argues he was at work during the time of the attack and

20   undergoing a medical procedure later that day, and thus, a reasonable officer would

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

1    have known he was innocent.  *Id.*  However, in making this argument, Bradford

2    overlooks that Mr. Mills, his former supervisor, testified at his first trial that he was

3    absent from work on September 29, 1995, the day of the rape, ECF No. 107-1, Ex.

4    B at 1036:17-1037:19, and that during the investigation a separate supervisor

5    informed Detective Light that Bradford was absent from work that day, *id.*, Ex. C

6    at 61:16-61:25.  Despite Bradford's argument to the contrary, such evidence

7    indicates that, at least at the time of the investigation and trial, evidence of a solid

8    alibi was not before Detective Scherschligt.  Bradford criticizes Detective

9    Scherschligt for failing to interview co-workers who worked alongside him that

10   day and could verify his attendance at work.  *See* ECF No. 103 at 7, ¶ 15.

11   However, Detective Scherschligt's course of investigation by omitting co-worker

12   interviews merely demonstrates at most a weakness in the investigative process,

13   not deliberate falsification of evidence.  *See Devereaux*, 263 F.3d at 1076-77.

14   Detective Scherschligt can hardly be faulted for relying on the testimony of

15   supervisors whose job was presumably to account for their employees, rather than

16   co-workers.

17        Third, as for his confession, Bradford argues its factual inconsistencies

18   should have alerted Detective Scherschligt that he was innocent.  ECF No. 102 at

19   4, 7.  Specifically, Bradford contends that "K.S. stated that her infant was present

20   in the house when she was raped, that the rapist placed a mask over her head, and

that the rapist spoke with her during the rape; yet Mr. Bradford denied all of these things… Mr. Bradford could not independently confirm any aspect of the 'confession' that he provided."  ECF No. 103 at 8, ¶ 17.

The Court observes state trial and appellate courts have upheld the constitutionality of Bradford's confession.  *See* ECF No. 22 at ¶¶ 25-29, 37, 51-52; *State v. Bradford*, 95 Wash. App. 935, 944-51 (1999) (holding that the admission of Bradford's confession at the first trial did not violate Bradford's Fifth, Sixth or Fourteenth Amendment rights, and that the State's failure to timely produce Bradford for an arraignment scheduled for the day he confessed did not render his confession involuntary); *see also* ECF No. 59 at 13 n. 4 (where this Court held that collateral estoppel barred Bradford from bringing a coerced confession claim). Given the validity of his voluntary confession, Bradford's argument that a reasonable officer would have known of his innocence based upon any factual inconsistencies contained in such a confession is unpersuasive, as a reasonable officer would rely on a valid, voluntary confession to further pursue a suspect.

Fourth, Bradford argues that Detective Scherschligt's May 1996 report "creates the *false impression* that [Ms. Searl] had *consistently* provided *inculpatory* evidence."  ECF No. 102 at 4-5.  In support, Bradford asserts that Detective Scherschligt first interacted with Ms. Searl in October 1995 and omitted her "contrary" statements from his May 1996 report, in reference to Ms. Searl's

1   statement that she flushed a Peeping Tom of her yard in April 1995 and around the

2   same time saw a man driving a small white car.  *Id.*  Bradford argues this

3   contradicts her later statements that she saw a man driving a white Toyota in her

4   neighborhood in September 1995.

5        The Court finds Bradford lacks evidence proving Detective Scherschligt

6   deliberately falsified reports.  In support of his contention, Bradford points to

7   Detective Scherschligt's 2006 and 2010 testimony concerning when he first met

8   Ms. Searl.  However, the relied upon testimony simply indicates that 10 and 14

9   years after the investigation, when relying upon his notes and reports, Detective

10  Scherschligt agreed that the reports made it seem like he first met Ms. Searl in

11  October 1995, not April 1996.  This is wholly insufficient to demonstrate that

12  Detective Scherschligt purposely omitted from later reports the details of an

13  alleged October 1995 meeting in order to create a "false impression" regarding Ms.

14  Searl's consistency.  Indeed, it is undisputed that all of the investigative reports

15  referencing Ms. Searl either by full name or by her first name and her next door

16  address to the crime scene, were provided to the defense.

17       Next, Bradford argues that due to Detective Scherschligt's conduct during

18  the photo montage identification procedure there are significant fact issues

19  regarding the reliability of Ms. Searl's identification of Bradford.  ECF No. 102 at

20  8-10.  Specifically, primarily relying upon Ms. Searl's journal entries, Bradford

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23

1    argues that "[b]efore showing Ms. Searl the photo montage Detective Scherschligt

2    told her 'that they had a man in custody who had confessed' to the rape, who 'fit

3    [Ms. Searl's] description' of a man whom she had seen in the neighborhood, and

4    who 'drove the same car.'"  *Id.* at 8.  Bradford further argues that after Ms. Searl

5    identified Bradford, Detective Scherschligt responded "that's the man we have in

6    custody," which in turn, "tainted her in-court identification."  *Id.* at 9-10.  Bradford

7    asserts Detective Scherschligt's conduct violated his department's own

8    identification procedures.  *Id.* at 9.

9         The Court finds Bradford lacks specific, direct evidence to demonstrate

10   Detective Scherschligt deliberately "tainted" Ms. Searl's in-court identification.  In

11   making this argument, Bradford's only piece of evidence is Ms. Searl's journal.

12   Yet, Ms. Searl testified that she was not confident in the accuracy of her journal

13   entries, *see* ECF No. 100-1 Ex. D at 16:7-13, and also testified, in contradiction to

14   her journal entry, that she did not remember Detective Scherschligt telling her the

15   suspect in custody drove the same car as the man she described, *see* ECF No. 100-

16   1 Ex. D at 19:2-17.  Such evidence is unreliable and insufficient to demonstrate

17   that Detective Scherschligt made these alleged statements in an attempt to obtain a

18   false identification from Ms. Searl.  Additionally, there is no evidence before the

19   Court that Ms. Searl ever testified, or wrote in a journal, that Detective

20   Scherschligt directed her to select Bradford's photo in the montage.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

1    Moreover, Bradford does not assert this argument to suggest that Detective

2  Scherschligt's procedures were so unduly suggestive as to constitute an

3  independent constitutional violation or that Ms. Searl's identification was

4  inadmissible at his criminal trials, but rather, as circumstantial evidence of

5  Detective Scherschligt's alleged motivation to fabricate evidence.  As such,

6  Detective Scherschligt's alleged conduct merely demonstrates he carelessly

7  handled identification procedures and did not follow department procedure.  It

8  does not satisfy *Devereaux's* "stringent test."  *See Gausvik*, 345 F.3d at 817; *see*

9  *also Devereaux*, 263 F.3d at 1076-77 ("Failing to follow guidelines or carry out an

10  investigation in a manner that will ensure an error-free result is one thing;

11  intentionally fabricating false evidence is quite another.").

12    Finally, in his Fourth Amended Complaint, in regards to his confession,

13  Bradford alleges that Detective Scherschligt's "used investigative techniques that

14  were so coercive and abusive that he knew or should have known would lead to a

15  false confession."  ECF No. 85 at ¶ 5.1.  Bradford's briefing clarifies that he is "not

16  pursuing a coerced confession claim under the Fifth Amendment; the interrogation

17  and confession are still relevant to Mr. Bradford's *Devereaux* claim [under the

18  Fourteenth Amendment]."  ECF No. 102 at 4 n.1.  However, the Ninth Circuit has

19  held that the Fifth Amendment, rather than the Fourteenth Amendment, governs a

20  plaintiff's § 1983 claim for deliberate fabrication of evidence, where the plaintiff

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

alleges that detectives coerced his confession and then used that confession to secure his conviction.  *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068-69 (9th Cir. 2012); *see also* ECF No. 59 at 13 n. 4 (where this Court held that collateral estoppel barred Bradford from bringing a coerced confession claim).  Thus, Bradford is now barred from "repackaging a Fifth Amendment coerced interrogation claim as one for deliberate fabrication of evidence arising under the Fourteenth Amendment."  *Id.* at 1069.

    In summation, the Court concludes that Bradford has not proven Detective Scherschligt (1) knew or should have known that he was innocent, or that (2) he employed investigative techniques that were so coercive and abusive that he knew or should have known that those techniques would yield false information.  *See Devereaux,* 263 F.3d at 1076.  Importantly, at the time of the initial investigation, there was no direct evidence of Bradford's innocence, Bradford became a suspect only after he confessed to committing lewd acts against woman in the same neighborhood where the rape occurred, and Bradford confessed to the rape.  Because Bradford has not proven Detective Scherschligt violated his constitutional rights by deliberately fabricating evidence, Detective Scherschligt is entitled to qualified immunity.  *See Glenn*, 673 F.3d at 870.  Accordingly, summary judgment in Detective Scherschligt's favor is appropriate on this claim.

//

### b. Alleged *Brady* Violation

Next, Bradford alleges Detective Scherschligt committed *Brady* violations prior to the 1996 trial when he (1) "failed to disclose that Ms. Searl had provided inconsistent statements," ECF No. 102 at 15-16, and (2) "failed to disclose the suggestive identification procedure that he conducted with Ms. Searl," *id.* at 16.

"A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused." *Youngblood v. W. Virginia,* 547 U.S. 867, 869 (2006) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).  The Ninth Circuit has held, "in no uncertain terms that *Brady's* requirement to disclose material exculpatory and impeachment evidence to the defense applies equally to prosecutors and police officers." *Gantt v. City of Los Angeles*, 717 F.3d 702, 709 (9th Cir. 2013) (citing *Tennison v. City and Cnty. of San Francisco,* 570 F.3d 1078, 1087 (9th Cir. 2009)).  "To state a claim under *Brady*, the plaintiff must allege that (1) the withheld evidence was favorable either because it was exculpatory or could be used to impeach, (2) the evidence was suppressed by the government, and (3) the nondisclosure prejudiced the plaintiff." *Smith v. Almada,* 640 F.3d 931, 939 (9th Cir. 2011) (citation omitted); *accord Milke v. Ryan,* 711 F.3d 998, 1012 (9th Cir. 2013).  Additionally, under *Brady*, "a § 1983 plaintiff must show that police officers acted with deliberate indifference to or reckless disregard for an accused's

rights or for the truth in withholding evidence from prosecutors." *Tennison*, 570 F.3d at 1089.

As for Ms. Searl's inconsistent statements, Bradford alleges that Ms. Searl's April 1996 statement, where she recalled seeing a man driving a small white Toyota in her neighborhood in September 1995, conflicted with her October 1995 statement, where she told law enforcement that she had seen a Peeping Tom in April of 1995 and around the same time she had seen a white male in a small white car driving in the area. ECF No. 102 at 16-17. Bradford argues Detective Scherschligt did not disclose Ms. Searl's alleged inconsistency in his May 1996 report. *Id.* at 17.

The Court finds Bradford is without sufficient evidence to demonstrate Detective Scherschligt acted with deliberate indifference concerning Ms. Searl's statements. *See Tennison*, 570 F.3d at 1089. Bradford does not argue that Detective Scherschligt failed to disclose Ms. Searl's statements, but rather, argues that the omission of her name from Detective Scherschligt's October 1995 internal memo allowed for this "continued deceit" to occur in his May 1996 report. ECF No. 102 at 17. The Court is not persuaded. Such an argument defies logic, as it would require that Detective Scherschligt deliberately omitted Ms. Searl's name from his October 1995 internal memo, before Bradford was a suspect, in order to insulate a statement she would provide to him months in the future.

Moreover, a *Brady* violation does not exist in a case in which the allegedly suppressed evidence is known by the defense. *See United States v. Dupuy*, 760 F.2d 1492, 1501 n.5 (9th Cir. 1985) ("Since suppression by the Government is a necessary element of a *Brady* claim, if the means of obtaining the exculpatory evidence has been provided to the defense, the *Brady* claim fails.") (citations omitted); *see also Raley v. Ylst,* 470 F.3d 792, 804 (9th Cir. 2006) ("where the defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence, the Government does not commit a *Brady* violation by not bringing the evidence to the attention of the defense.") (quoting *United States v. Brown*, 582 F.2d 197, 200 (2d Cir. 1978)).  Here, prior to the first trial, it was disclosed to Bradford's defense counsel (1) that Officer Hipner's initial Incident Report stated a neighbor named "Sue" at 3008 Barge reported that in "May '95 she had a 'Peeping Tom' who had been looking in her bedroom window, ECF No. 101-1, Ex. A; (2) that Detective Scherschligt's October 1995 memo[6] stated a

---

[6] Bradford argues that the 1995 October memo was "buried" in the file turned over to defense counsel, *see* ECF No. 102 at 19, but the record does not support this assertion as it is evident that defense counsel was aware of the memo and referenced it during the cross-examination of Detective Scherschligt during the first trial.  *See* ECF No.104-4, Ex. 33 at 1238:12-17.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 29

1    neighbor reported she flushed a Peeping Tom out of her yard in April 1995 and

2    around that same time she had seen a man in a small white car driving around the

3    neighborhood, *see* ECF No. 104-1, Ex. 5; and (3) that Detective Scherschligt's

4    May 1996 Detail Report stated that a neighbor named Susan Searl chased a

5    prowler from her yard and had seen a small white Toyota driving in the area of the

6    rape in September 1995, *see* ECF No. 101-1, Ex. F.  Accordingly, Bradford's

7    defense counsel was given the means to identify Ms. Searl as "Sue" and the next

8    door "neighbor" in the 1995 reports, and use that information to impeach her

9    concerning when she saw the white car.  Thus, because all of the investigative

10   materials concerning Ms. Searl's statements were disclosed to defense counsel, the

11   Court finds there was no suppression under *Brady*.  *See Milke v. Ryan*, 711 F.3d at

12   1017-18 (if the defendant "has enough information to be able to ascertain the

13   supposed *Brady* material on his own … there's no *Brady* violation") (quotation

14   marks and citations omitted).

15        As for Ms. Searl's photo montage identification, Bradford argues Detective

16   Scherschligt failed to disclose the "suggestive identification procedure that he

17   conducted with Ms. Searl."  ECF No. 102 at 17.  In support, Bradford argues

18   Detective Scherschligt did not disclose that he "told Ms. Searl that the man in

19   custody fit the description of the man that she had described, drove the same car,

20   and had confessed to raping K.S."  *Id.*  Bradford further argues this evidence would

have undermined Ms. Searl's in-court identification of Bradford and undermine the credibility of both Ms. Searl and Detective Scherschligt as government witnesses.

"An identification procedure is suggestive when it emphasizes the focus upon a single individual thereby increasing the likelihood of misidentification." *United States v. Montgomery*, 150 F.3d 983, 992 (9th Cir. 1998) (internal quotation marks, alteration, and citation omitted).  Here, while the Court disapproves of Detective Scherschligt's conduct, assuming it occurred, there is no evidence which demonstrates he emphasized the focus upon Bradford's photograph during Ms. Searl's identification. For instance, there is no evidence to suggest that Detective Scherschligt urged Ms. Searl in any way to select Bradford from among the six people depicted in the photomontage, nor that the montage itself emphasized or distinguished Bradford in some way.  *See id.*  Accordingly, there is no basis for this Court to conclude that Detective Scherschligt's conduct during the photo montage was in any way impermissibly suggestive.

Given the lack of evidence that Detective Scherschligt emphasized the focus upon Bradford's photograph in some way, the Court finds Bradford's claim is

defeated by a lack of materiality[7] of any allegedly withheld evidence.  *See Youngblood*, 547 U.S. at 867 (explaining evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different") (quotation marks and citation omitted); *see also Kyles v. Whitley,* 514 U.S. 419, 434 (1995) (explaining a determination of materiality under the *Brady* standard requires the evidence to be considered collectively, and in light of the strength of the prosecution's case). Moreover, it must be remembered that Bradford had confessed to exposing himself in the neighborhood and Ms. Searl only identified a suspicious person driving a white Toyota around the neighborhood as Bradford, not the rapist.  Accordingly, in light of the strength of the prosecution's case,[8] and because Detective's Scherschligt's conduct was not impermissibly suggestive, the Court concludes that

---

[7] "The terms 'material' and 'prejudicial' are used interchangeably in *Brady* cases. Evidence is not 'material' unless it is 'prejudicial,' and not 'prejudicial' unless it is 'material.' " *Benn v. Lambert*, 283 F.3d 1040, 1053 n.9 (9th Cir. 2002).

[8] In regards to the strength of the prosecution's case, the Court notes that the prosecution presented the jury a valid confession, and, importantly, evidence of DNA testing excluding Bradford as a contributor of genetic material found at the crime scene was not yet known and not presented to the 1996 jury.

the evidence was not so critical as to undermine the confidence in the outcome of Bradford's first trial.

In summation, because Bradford has not proven Detective Scherschligt violated his constitutional rights by suppressing materially favorable evidence, Detective Scherschligt is entitled to qualified immunity. *See Glenn*, 673 F.3d at 870. Accordingly, summary judgment in Detective Scherschligt's favor is appropriate on this claim, as well.

**ACCORDINGLY, IT IS ORDERED:**

Defendant's Motion for Summary Judgment (ECF No. 98) is **GRANTED**. All claims are **DISMISSED with prejudice.**

The District Court Clerk is directed to enter this Order, provide copies to counsel, enter judgment for Defendant, and **CLOSE** this case.

**DATED** May 23, 2016.



THOMAS O. RICE
Chief United States District Judge

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 33